**In re Harold Gregg LIMING a/k/a Gregg Liming, Debtor.**

**CENTRAL NATIONAL BANK AND TRUST COMPANY OF ENID, OKLAHOMA, Plaintiff,**

v.

**Harold Gregg LIMING, Defendant.**

**Bankruptcy No. Bk–81–00391.**
**Adv. No. 82–0043.**

United States Bankruptcy Court, W. D. Oklahoma.

Sept. 2, 1982.

Clark McKeever, of McKeever, Glasser, Conrad, Herlihy & McKeever, Enid, Okl., for plaintiff.

Jon R. Ford, of Ford, Grey, Harvey & Smith, Enid, Okl., for debtor-defendant.

## MEMORANDUM AND ORDER

### DAVID KLINE, Bankruptcy Judge.

This matter came on for hearing after required notice upon Central National Bank's complaint asking that the debt owed by the defendant be held nondischargeable as violative of 11 U.S.C. § 523(a)(2)(B). The debtor urges that said debt is dischargeable and additionally seeks to avoid the lien under Code section 522(f). After a full evidential hearing the case was taken under advisement with briefs invited.

## ISSUE

(1) Is a farm tractor an implement (or tool of the trade) within the avoiding scope of Code § 522(f)(2)(B). (2) Is the renewed debt balance nondischargeable.

## FACTS

1. On April 7, 1980, the debtor went to the plaintiff to borrow $15,000.00 for operating capital in his farming operation; and submitted a written financial statement falsely showing a net worth of $183,000.00. The bank advanced the $15,000.00 and took a security interest in a John Deere tractor worth some $30,000.00.

2. On June 23, 1980, the debtor returned to the bank and executed a second financial statement listing a net worth of $33,096.00.

3. On July 7, 1980, the debtor and the plaintiff entered into a renewal agreement of the April 7, 1980 note wherein the debtor reduced the loan and refinanced the unpaid balance. The John Deere 4840 tractor continued as collateral.

4. On February 27, 1981 the debtor filed a chapter 13 petition but converted to a chapter 7 on December 10, 1981.

5. At the time of the filing of the petition, the debtor was a farmer, although at the time of the hearing herein he was employed by Northrup at Vance Air Force Base, Enid, Oklahoma.

## LAW

### *Lien Avoidance*

1) Code § 522(f) provides:

"... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is—

. . . . .

(2) a nonpossessory, nonpurchase-money security interest in any—

. . . . .

(B) implements, professional books, or tools, of the trade of the debtor of a dependent of the debtor; ..."

2) The debtor's right to avoid liens impairing exemptions is not dependent or related to the nature of the debt secured by such liens and debtor may bring action to avoid lien even though creditor has commenced a separate action to have debt secured by the lien declared nondischargeable. *In re Gantt*, 7 B.R. 13, 6 B.C.D. 967 (Bkrtcy. N.D.Ga.1980).

3) 31 Okla.Stat. (1981) § 1(A)(5) provides:

"A. Except as otherwise provided in this title and notwithstanding subsection B herein, the following property shall be reserved to every person residing in the state, exempt from attachment or execution of every other species of forced sales for the payment of debts, except as herein provided.

\* \* \* \* \* \*

5. All implements of husbandry used upon the homestead."

4) 68 Okla.Stat. (1971) § 2422 states in part:

"The term 'farm tractor' as used in the preceding Section and in the following Section is hereby defined to be any motor vehicle of tractor type designed and used primarily as a farm implement for drawing plows, lister, mowing machines, harvesters, and other implements of husbandry on a farm . . ."

5) In *Davis v. Wright,* 194 Okl. 451, 152 P.2d 921, 922 (1944) the Oklahoma Supreme Court noted:

"This court is committed to the rule that statutes exempting property from forced sale for the payment of debts are to be given a reasonable construction to effect this intent and purpose, and in case of doubt the doubt is to be resolved in favor of the exemption.

The tractor here involved by definition, supra, is an implement of husbandry and not a motor vehicle . . . and consequently constituted exempt property . . ." (citations omitted)

### False Financial Statement
### Code Statute

As noted in 11 U.S.C. § 523(a)(2):

"(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—

. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by— . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; . . ."

### CONCLUSION

At the time of his petition filing the debtor was a farmer as defined by 11 U.S.C. § 101(17) so as to qualify for exemptions allowed by law. Moreover, the tractor in question is an "implement of husbandry used upon the homestead" under Oklahoma law so as to be "exempt from attachment or execution and every other species of forced sales for payment of debts". [§ 1(A)(5), supra] Significantly, there is some question under federal decisional law whether the Code § 522(f)(2)(B) avoiding authority as to "implements . . . or tools, of the trade of the debtor" is as broad as unlimited state exemptions where "non-purchase-money security interest" loans are concerned. A well-reasoned view restricts this avoidance power to security interests in hand tools and small implements. Read *In re O'Neal,* 20 B.R. 13, 9 B.C.D. 17 (Bkrtcy.E.D.Mo. 1982); *In re Sweeney,* 7 B.R. 814, 6 B.C.D. 1377, 1379–80 (Bkrtcy.E.D.Wis.1980). This construction makes some sense since otherwise prospective borrowers may find it difficult to finance repairs of commercially valuable personal property or to negotiate business loans. However, the Code section's express language implies no such limitation. The instant tractor is an implement, the loan in question was a non-purchase money one and avoidance lies under Code § 522(f)(2)(B). *Augustine v. United States,* 675 F.2d 582, 8 B.C.D. 1412 (C.A. 3 1982); *In re Seacord,* 7 B.R. 121, 123–24 (Bkrtcy.W.D.Mo.1980). Compare *Augustine,* supra, 8 B.C.D. at 1416: "Nothing in Section 522 suggests a distinction that would prohibit aggregation (as to claimed federal exemptions) for purposes of lien avoidance while permitting it for exemption purposes."

Although the debtor can avoid the instant lien the unpaid balance of the owed, renewed loan is nondischargeable. Initially, the debtor submitted a clearly false financial statement which was relied upon by the bank to its detriment and gave rise to this debt. At the time of the renewal and debt reduction the lender while advised of the original deceit, had no choice but to renew and mitigate its loss the best way possible. Under such circumstances the renewed unpaid amount remains nondischargeable. Read *In re Carter,* 11 B.R. 992,

7 B.C.D. 1046 (Bkrtcy.M.D.Tenn.1981). Cf. *In re Archangeli,* 6 B.R. 50, 7 B.C.D. 63, 64 (Bkrtcy.D.Me.1980).