**In re Frederic W. HILARY and Joyce V. Hilary, Debtors.**

**Bankruptcy No. 4–86–2751.**

United States Bankruptcy Court,
D. Minnesota.

May 15, 1987.

John F. Wagner, Apple Valley, Minn., for creditor.

Ian Traquair Ball, William C. Mortenson, Minneapolis, Minn., for defendant/respondent.

## ORDER DISALLOWING EXEMPTION AND DENYING MOTION TO AVOID LIEN

ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing on the objection of the First State Bank of Apple Valley to the debtors' claim of an exemption and the debtors' motion to avoid the bank's security interest. Ian Traquair Ball and William C. Mortensen appeared for the debtors and John F. Wagner appeared for the bank.

### FACTS

The debtor, Frederic W. Hilary, was employed as a professor of music at Gustavus Adolphus College from 1938 through 1951. His duties included conducting the Gustavus symphonic band and teaching some music classes, spending about five percent of his time teaching violin.

In 1954 after some post-graduate study the debtor was employed by Central Lutheran Church in Minneapolis as minister of music, directing five church choirs. In 1979 he retired from Central Lutheran Church and was employed as a choir director at Grace Lutheran Church in Apple Valley from 1980 until 1985 when he retired at the age of 76.

This motion revolves around a violin that the debtor purchased in 1928 for $1,800.00 while he was a student at the Juillard School of Music. The violin was labeled "Andreas Guarnerius". The label would indicate that the violin was made by Jacobus Januarius, a famous violin maker from Cremona, Italy. At one point the debtor had the violin insured for $30,000.00 although he now claims that several experts have told him that the label is a forgery. The value of the violin is therefore unknown. While the debtor did use the violin to teach violin courses at Gustavus Adolphus and occasionally used it to play at special church events like funerals and weddings, the violin has always been held primarily for the debtor's personal use and pleasure.

On March 27, 1986, the debtor borrowed $2,786.53 from the First State Bank of Apple Valley and gave the bank a security interest in the violin. The bank holds a nonpossessory, nonpurchase-money security interest in the violin.

The debtor together with his wife filed a Chapter 7 bankruptcy petition on September 16, 1986. The debtors' schedules did not disclose the violin and listed the First State Bank's claim on their schedule of unsecured creditors. On October 10, 1986, the debtor filed an amended Schedule B–4, Property Claimed as Exempt, and added the Cremona violin. The debtor did not give notice of the amendment to the bank.

On February 6, 1987, the debtor filed a motion to avoid the bank's security interest in his violin pursuant to 11 U.S.C. § 522(f)(2)(A). The bank did not file an answer to the motion but appeared at the hearing on February 25, 1987, and objected. Basically the bank objected on the basis that the violin was not properly claimed as exempt. The matter was set for an evidentiary hearing on April 10, 1987. On March 19, 1987, the debtor filed an amended motion to avoid the bank's security interest. On April 9, 1987, the bank filed its response to the debtor's motion.

Approximately six months ago the debtor sent the violin to a broker in an attempt to find a buyer but has received no offers.

### DISCUSSION

Several issues are raised by the debtor's motion. The debtor first argues that the issue of whether or not the violin is exempt may not be litigated since the time for objecting has expired. There is no doubt that this matter has been procedurally botched both by the debtor and the bank. The debtor omitted the violin from his schedules. This omission was disclosed by the bank at the meeting of creditors. The debtor attempted to correct his oversight by filing an amended B–4 Schedule. How-

ever, he neglected to amend his schedule of personal property or his schedule of secured creditors. Bankruptcy Rule 1009 governing the amendment of schedules provides that "the debtor shall give notice of the amendment to the trustee and to any entity affected thereby." The bank had expressed its interest in the Cremona violin and was therefore affected by the debtor's claim that the violin is exempt. However, the debtor gave no notice of the amendment to the bank. Thus, although Bankruptcy Rule 4003(b) would have required an objection to the claim of the violin as exempt to be made within 30 days after the amendment, in this case, the bank cannot be held to that time limit. The first notice the bank had of the amendment was on or about February 6, 1987, when it received the debtor's motion to avoid the bank's lien. The prudent thing for the bank to have done at that point would have been to file an objection to the claim of exemption. Similarly, Local Rule 107(b) requires the bank to file an answer to the motion. The bank did neither.

However, the bank did appear at the February 25th hearing and state its position in court that the violin was not properly claimed as exempt. Notwithstanding everyone's failure to follow the rules, it is clear that the bank gave the court and the debtor notice of its objection to the claim of exemption shortly after it received notice of the claim of exemption.

The second issue raised by the bank is whether or not the violin is properly claimed as exempt. While the debtors' B–4 Schedule does not specify the basis for the exemption, it is clear that the claim is made under Minn.Stat. § 550.37 subd. 2 (1986), which provides an exemption for "the family Bible, library, and musical instruments." 1967 Minn.Laws, Ch. 853 § 1 extensively amended Minn.Stat. § 550.37 (1965). Prior to the amendments, the relevant portions of § 550.37 provided an exemption for:

(1) the family Bible;

(2) family pictures, schoolbooks or library, and musical instruments for the use of the family.

Minn.Stat. § 550.37 subd. 1(1) and (2) (1965). While there is some potential ambiguity in the current statute, the parties agree that the word "family" modifies all three exemptions in subdivision 2. Thus, for our purposes the exemption provided is for "family musical instruments".

■ In the exemption statutes family is meant to differentiate from business or other nonpersonal use of property. The exemption is available only for musical instruments that are for the personal use of the debtor or the debtor's family. In this case the debtor's violin is so used. Although it did in the past have some business use, it no longer does and even in the past, the violin was primarily for personal, not business use. As a result, I find that the violin is a family musical instrument and covered by Minn.Stat. § 550.37 subd. 2 (1986).

Leaving aside for the moment the bank's second contention that the Minnesota statute is unconstitutional, the next question is whether the debtor can avoid the bank's lien on the violin. The Bankruptcy Code provides for lien avoidance under certain circumstances:

(f) Not withstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.    .    .    .    .

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor....

11 U.S.C. § 522(f)(2). Once it is determined that the violin is exempt, this question is easily answered. Since the violin is exempt, the bank's security interest is a lien that impairs that exemption. The bank has conceded that it holds a nonpossessory, nonpurchase-money security interest, it is

obvious that the violin is a musical instrument,[1] and I have already found that the violin is held primarily for the debtor's personal and family use. Consequently, all the requirements for lien avoidance are met and the debtor would be able to avoid the bank's lien on his violin.

Lastly, I come back to the most difficult issue. The bank argues that Minn.Stat. § 550.37 subd. 2 (1986) is violative of Article I, § 12 of the Minnesota Constitution which provides that:

A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law.

Minn. Const., Art. I, § 12. The bank argues that the statutory exemption for family musical instruments with no dollar limitation is not a reasonable exemption and therefore violates Article I, § 12. The bank relies primarily on the recent Minnesota Supreme Court opinion *In re Tveten*, 402 N.W.2d 551 (Minn.1987) which found the statutory provisions found in Minn. Stat. § 550.37 subd. 11 and § 64B.18 for fraternal benefit society benefits to be unconstitutional because they were without dollar or other limitation.

Obviously courts are reluctant to invalidate statutes. As the Minnesota Supreme Court itself noted in *Tveten*, a duly enacted statute carries with it a presumption in favor of constitutionality which prevails unless the party challenging the constitutionality has demonstrated beyond a reasonable doubt that it violates a constitutional provision. 402 N.W.2d at 556. The *Tveten* court specifically found that the constitutional provision of reasonable amount of property meant reasonable dollar value of property. It further concluded, however, that while some value limitation was required that a "specific value limit" is not required. The constitutional requirement would be met, either by a statutory dollar limitation or by some other limitation, the statutory limitation "based upon objective criteria". *Id.* at 558.

The debtor argues that the statutory use of the word "family" serves as the objective criterion that the Supreme Court required. I am afraid I cannot agree. The inclusion of the word "family" serves only to determine whether specific property is of the type that will fall within the scope of the statute. It does not serve to limit in an objective way the value of the property that can be exempted under Minn.Stat. § 550.37 subd. 2 (1986). While I might agree that in general family musical instruments may be of less value than musical instruments owned for professional use, it is not a standard that will limit the value of a musical instrument that can be exempted in a particular case. This case illustrates the problem. The debtor and the bank make much about how much the violin is worth. That really is not an issue. The statute itself does not differentiate among musical instruments based on their values, so the value is irrelevant for purposes of determining the exemption. It is possible under the statute as written that the debtor would be allowed to exempt property worth $30,000.00 or more, and certainly there are debtors who own musical instruments of that value, even if this debtor does not.

█ In short, I conclude that Minn.Stat. § 550.37 is not limited to a reasonable amount of property and therefore violates Article I, § 12 of the Minnesota Constitution. Since the statute is unconstitutional, the debtor may not use it to claim his violin as exempt. It follows that under 11 U.S.C. § 522(f) the bank's lien does not impair an exemption to which the debtor would otherwise be entitled.

THEREFORE, IT IS ORDERED:

1. The debtor's Cremona violin is not exempt.

2. The debtor's motion to avoid the security interest of First State Bank of Apple Valley in the Cremona violin is denied.

---

**1.** The bank claims that the violin is an antique, not a musical instrument. I do not know why it cannot be both.